Good morning, Your Honors. May it please the Court, John Drake on behalf of the appellant, Alan Wisdom. I'm going to attempt to reserve about three minutes of my time for rebuttal and I'll monitor my own clock. Your Honors, this case is about accountability. Section 322A of the Bankruptcy Code requires a person selected to serve as a trustee to file with the Court a surety bond before beginning his or her official duties. The appellee in this case, Mr. Gugino, never did that. He was a United States trustee, wasn't he? No, Your Honor. He was appointed as the Chapter 7 trustee in this case. But he's from the U.S. Trustee's Office. No, Your Honor. Respectfully, I don't believe that that's the case. Perhaps Mr. Evick could clear that up. But I believe that he is a private attorney who serves as appointed Chapter 7 counsel in Chapter 7 bankruptcy cases. So your position is he was never covered by a blanket bond? No, Your Honor. He certainly was covered by a blanket bond. However, the fact is he was never filed with the Court as Section 322A of the Bankruptcy Code requires. At no time? To be precise, Your Honor, not until my client, Mr. Wisdom, brought that fact to his attention in this litigation some three years after his appointment began and after he had concluded all of his duties. And so Gugino is asking this Court to excuse that fundamental misstep of not filing his surety bond. What is the practical consequence from your perspective of this fundamental misstep? Who potentially was exposed by this bond not being in the form that you think it should have been? Well, Your Honor, to be clear, the position is not that the bond was not in the form that it should have been, but it was not filed with the Court. And the ---- And what's the practical consequence? The practical consequence, Your Honor, is that the trustee, Mr. Gugino, never qualified for his appointment under the parameters that Congress has set for qualifying to serve as a trustee. And what's the practical consequence of that? That he took all of the actions that he took, including ---- everything including administering the bankruptcy estate, liquidating life insurance policies, et cetera, without the proper authority. But isn't that, at the end of the day, somewhat like the default argument we'll get to? Isn't that form over substance? Respectfully, no, Your Honor. I don't believe so. I think an analogy that might be taking the bench, having been nominated to serve by the President, but had not been confirmed by Congress, you're technically not authorized to render any decisions. And that's essentially what we're dealing with in this case. So Gugino was certainly taking the actions that someone in his position would take, but he lacked the proper authority to do that. Now, the de facto trustee doctrine is one way ---- go to protection of third parties, as opposed to rendering his services null and void? Your Honor, the bond is intended to protect the United States government. So the beneficiary of the bond is the United States trustee. And how was, in this case, how was the United States government harmed? The government was not harmed, Your Honor. However, my client has claims that if they are proven, would ultimately be the responsibility of the United States government to pay, to the extent that the Chapter 7 trustee, Mr. Gugino, was not able to pay the judgment. But the bond existed, right? That's correct, Your Honor. And we do not ---- So the United States would have been protected. The question is, would the ---- he'd not register the fact that the bond existed. That's the problem. That's precisely right, Your Honor. So the United States, to the degree it was protected, was protected whether he'd notified or not. Arguably, Your Honor. But there is a, presumably, a reason why Congress used the very specific language filed with the Court in Section 322a of the Bankruptcy Code. It could have just as easily said that a trustee must be covered by a bond or must procure a bond. This strikes me as a gotcha argument, pretty much like the default argument. Well, Your Honor, it may be a technical argument, but it is one that's important. Because essentially what Gugino is asking this Court to do is ignore the statute. I mean, let's be perfectly clear. He's pointing to a doctrine, the de facto trustee doctrine, that this Court has never recognized, and saying, don't worry what the statute actually says. It's a no harm, no foul situation. And respectfully, Your Honor, that's a very slippery slope. Because the minute this Court disregards express requirements set by Congress, we're going down a very dark path. And given that the language of the statute is so clear that this is a condition of qualifying for the appointment, it simply cannot and should not be done. Now, with respect to this de facto trustee doctrine, as I said, this Court has never recognized it. So in order to affirm, this Court would have to be making new law. But what Gugino fails to mention is that the de facto trustee doctrine is intended to be a workaround for minor good faith deviations from the statute. And more particularly, when a trustee fails to file a bond within the time frame required, which is within seven days of being appointed and before beginning his or her official duties. Let's say in a hypothetical bankruptcy case like yours, where there is a bond, but it's not been filed, as you contend. And something did happen that harmed the United States or an agency, and they sought recompense. Would it be a defense, a blockage from using the bond that it hadn't been filed? Or would the bond have to respond? No, Your Honor. I don't believe that the ---- Do you know the answer to that? I'm not aware of any cases that address that question, Your Honor. However, applying my knowledge of the reason why a bond needs to be filed, I don't believe that the fact that it was not filed would prohibit anyone from asserting a claim. Electing on the bond. Against the bond, correct. Okay. Yes. Thank you. And so these de facto trustee doctrine cases, they deal with situations in which bonds are filed a week or two late. We're talking about a matter of days. And what's very significant about them is the fact that they underscore that everyone knows that these surety bonds do have to be filed. And it's come up in the past where for various different reasons, administrative problems, the bond just happens to be filed a few days late. And the courts in those cases, rightly or wrongly, have said, well, we're going to implement a workaround because this is just a very minor good-faith deviation. And respectfully, Your Honor, what we have in this case is not a minor good-faith deviation. It is a complete disregard. So it's a long-term good-faith deviation? Well, Your Honor, I don't believe so. And in fact, I think you don't believe it was good faith? I think there is evidence in the record to suggest that perhaps this was not a good-faith deviation from the statute. And I would point to that. What's that evidence? Well, Your Honor, my client, Mr. Wisdom, asked the Chapter 7 trustee, the U.S. Trustee's office, the Bankruptcy Court Clerk's office on several occasions to simply confirm, yes or no, has this bond been filed with the court? And he never once got a straight answer. And if you look at the supplemental excerpts of record that I supplied, the record is very clear that he's asked this question several times and never gets a straight answer. And if it were a good-faith mistake, the Chapter 7 trustee, the U.S. Trustee, would simply say, Mr. Wisdom What form did the asking take? Your Honor, Mr. Wisdom sent a letter to the Clerk's office and to the United States Trustee's office and said, please provide a copy of the filed bond. When he didn't get a response, he sent follow-up letters saying, please send a copy of the filed bond. And to the extent that the bond was never filed, please confirm that fact for me. Just say, you're right, Mr. Wisdom, the bond was never in fact filed. And all he ever got was a copy of the bond that bore a filing stamp that was the day before it was sent to him. So the record is very clear that this bond was filed in direct response to Mr. Wisdom raising such a stink about this. And I would hope so. Roberts, I realize this would be speculating, but I can't conceive of a reason why there would be an intentional failure to do this by those you're accusing. I mean, what's in it for them is, I guess, the way I would ask the question. To be clear, Your Honor, I don't mean to cast any aspersions. I don't mean to suggest that it was intentional. I think there's evidence from which that could potentially be inferred. But regardless of the reason, the fact of the matter is that the statute requires  this bond to be filed. And so people who are in Mr. Wisdom's position of having to try and track down this bond and bring a cause of action against it really aren't able to do so. And again, the record is clear that Mr. Wisdom was really put through the ringer to just determine whether this bond was in fact filed. And if the statute had been complied with, he wouldn't have had to do that. I see that I'm running short on my time, so I'll reserve the rest for rebuttal. Thank you. Thank you. May it please the Court. Counsel, my name is Josh Shevitt, appearing on behalf of Mr. Gugino and Liberty Mutual, the surety bond company, in this matter. Judge Seaborg, you made a telling comment in your questioning, which was, what were the implications of the argument regarding the bond under 322A, and the implications are drastic. And Mr. Wisdom himself has spelled out how drastic those implications are, because what he argues in some of his pleadings and in his motions is that because there was no bond allegedly filed, that essentially every Chapter 7 liquidation in Idaho over the last 10 or so years and any Chapter 7 liquidation involving Mr. Gugino is essentially null and void. And I think that is the implication of the argument, which is that if Mr. Gugino didn't have the authority to do what he did, then his acts are void ab initio. You know, I think I probably appeared in bankruptcy court half a dozen to a dozen times in private practice. And every single time I appeared in bankruptcy court and the bankruptcy judge was appointing a trustee, and this four or five different bankruptcy judges, every single time the bankruptcy judge said, I appoint Jane Doe as trustee on this case pursuant to her bond. That didn't happen here. That did not happen here. And I've appeared in bankruptcy court in Idaho a fair number of times, and I can. I'm sure more than I have. And it doesn't end. And that's not something that I've seen. And that doesn't mean it's never happened before. But Mr. Gugino here was appointed by the U.S. trustee and chosen at random. And so perhaps the procedure is different in the courts. But at some point I assume this bankruptcy judge, Judge Myers, formally appointed your client as trustee, either orally at a hearing or pursuant to an order? All I can represent to the court is I have not seen that done in the District of Idaho. I have not seen that done. And as far as you know, that's not in the record. As far as I know, that's not in the record. Thank you. And if it were to be in the record, there's already been an appeal of the actual of the bankruptcy itself, which is Judge Pappas's bankruptcy. And that decision, as the court knows, his decisions were upheld on appeal to liquidation of the policies. That was approved. And so that's where that appointment would be if there is one. And that appointment, I don't believe, was challenged under 322A in that setting. There were allegations of illegality made in that setting, but I don't think the bond issue was raised in the Chapter 7 itself. The flip side of the void initio parade of horribles, which you presented, is your counterpart's argument that the de facto trustee doctrine not being officially recognized thus far in the Ninth Circuit, we're in a position where, to adopt your view, we just ignore, we're just ignoring a failure. Can we do that? I mean, can it simply be, well, it's a shame, but that's the way it is, and someday the de facto trustee doctrine will be in place and all will be well? I'd answer that with two comments. First, if you look at the text of 11 U.S.C. 322A, I don't know that that statute actually requires in every case that the bond be filed in that case. And the statute simply says it requires that a bond have been filed with the court in favor of the United States conditioned on the faithful performance of such official duties. And so I don't know that I agree with the assumption here, which is that the statute requires the filing of the actual bond in every single Chapter 7 in which a trustee appears and handles that bankruptcy. And so I don't know that the failure that is presented to this court is actually a failure. And what filing means is not defined by the statute. And now the court, the U.S. trustee had this bond, and we admitted that from the very beginning. We produced the blanket bond in discovery. Mr. Gugino is clearly covered by the bond. His name is mentioned in one of the certificates that's in the record. And so the court did have the bond. And so, again, I don't know that there's been noncompliance with the statute because I don't know that the statute is clear. And it certainly doesn't expressly say that it has to be filed in that individual bankruptcy in every case. And as far as, and putting that argument aside, the de facto trustee doctrine exists, in my client's view, to prevent precisely the things that are happening here, which is we've gone through a bankruptcy. There's been a liquidation. Mr. Wisdom is the one who started the bankruptcy in order to shed his creditors, 13 of whom were parties he'd been involved in litigation, and it had a fee awards against him. So he shed them. And so now that he's shed his creditors, he wants some kind of affirmative relief from my clients. And so in order to do that, he's using this technical argument based upon 322A to undermine decisions he doesn't agree with in an effort to get my client to pay him money. Now, he's not saying really let's start from the beginning and let's make my creditors whole. He's apparently done with them. He's simply saying that he wants affirmative relief in this case and wants a ruling that would undermine what the Chapter 7 trustee in Idaho, and there's more than one, have done for years, which is operate under this blanket bond without filing it in each individual case. So I take it from what you just said, your position is even in this case, if no bond had ever been filed, no harm, no foul. I would agree with that. So long as the bond exists. I mean, that's your argument. So long as it exists, yes. I don't. It is truly form over substance. When I appeared in the adversary action and appeared on behalf of Liberty Mutual, we admitted in open court and we admitted in discovery this is the bond and it applies here. And so there's never been any question about that bond being in place and being there for the protection of the United States. Not necessarily. I was trying to think my way about why is it that the United States is, that the bond is for the benefit of the United States. I would assume, though I don't know, that that is because once the Chapter 7 is filed, that estate becomes the property essentially of the United States administered by the U.S. trustee.  Then the United States is going to be the party from whom that property was taken. And in fixing and remedying theft or fraud by the trustee or anyone else, if the bond pays out, that may ultimately be for the benefit of someone like Mr. Wisdom. But that does raise a question here of whether Mr. Wisdom really has any kind of standing to raise this particular objection because the bond is for the benefit of the United States. I'm hearing you say that what happened in this case with respect to the filing of the bond or rather than not filing the bond as a common practice in Idaho, it may be apparent from the course of this argument that it might be a good idea to change the practice in Idaho. It may be. None of that, though, changes the fact that Mr. Gugino acted pursuant to authority given to him by the court, acted under the statute. It doesn't change the fact that the Ninth Circuit has upheld everything that he did in the bankruptcy. Unfortunately for Mr. Wisdom, as this Court noted in that appeal, he may have been failed by his attorneys, who are no longer parties to this case. They were initially involved in this adversary action. And so in our view, the propriety of the liquidation of the policies and the handling of this bankruptcy by Mr. Gugino has been approved of and affirmed by this court, and so Mr. Wisdom's appeal should be rejected. Okay. Thank you. Thank you. Mr. Drake, you've saved some time. Your Honors, I only have a minute remaining, so I'll be brief. I do want to clear up one fundamental misunderstanding by opposing counsel. Opposing counsel has stated that our position is that the blanket bond needed to be filed in this individual case. That is not our position. Our position is that the blanket bond needs to be filed once in the District of Idaho. This Court is sitting today in the Western District of Washington. Our neighbor to the north, the District of Alaska, has a separate case number assigned just for blanket bonds. The bonds are filed with the District of Alaska clerk's office and have their own case number so that when someone wants to go find them, they can do that. That has never happened in the District of Idaho, to your point, Judge Fletcher. Judge Hawkins, you asked whether there's any record of Mr. Gugino having been formally appointed, and the answer, frankly, is no. Mr. Wisdom has challenged whether Mr. Gugino was properly appointed. He briefed that in his pro se briefing, and there simply is no record of an affirmative appointment having been made. The bankruptcy court's position was that the filing of the case, the generation of the filing of the case, and the fact that a trustee had been assigned was a formal appointment, we respectfully disagree with that conclusion. I see that I've run out of time. Unless the Court has any further questions, I'll sit down. Okay. Thank you very much. I note on the day sheet that you are also pro bono. Were you appointed by this Court? Yes, I was, Your Honor. Well, I'll give you the same thanks we gave to the last pro bono attorney. Thank you very much. Your work helps us a great deal, and I'll say the same thing to Mr. Evatt. I won't thank you in the same way. Thank you, Your Honor. It's been a pleasure. Wisdom v. Gugino submitted. Thank you very much, both sides.
judges: Hawkins, W. Fletcher, Seeborg